JOSHUA HILL (SBN 250842)
  jhill@paulweiss.com
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
535 Mission Street, 24th floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 432-3101

*Attorneys for Defendant*
*KKR & Co. Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, et al., ex rel. Caleb Hernandez, D.O., and Chionesu Sonyika, M.D.,<br><br>             Plaintiffs-Relators,<br><br>     v.<br><br>ScribeAmerica, LLC, KKR & Co. Inc., Envision Healthcare Corporation, EmCare Holdings, Inc., EmCare, Inc., and Reimbursement Technologies, Inc.,<br><br>             Defendants. | Case No. 2:21-cv-04324-FLA-AS<br><br>**DEFENDANT KKR & CO. INC.'S MOTION TO DISMISS RELATORS' FIRST AMENDED COMPLAINT**<br><br>*[Concurrently filed with Request for Judicial Notice; Declaration of Joshua Hill; [Proposed] Order]*<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Time:          1:30 p.m.<br>Date:          January 31, 2025<br>Location:     First Street Courthouse, Courtroom 6B<br>                   350 W. 1st Street, 6th Floor<br>                   Los Angeles, CA 90012<br><br>Action Filed:     May 24, 2021<br>Trial Date:       None Set |

### NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**PLEASE TAKE NOTICE** that on January 31, 2025, at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, in Courtroom 6B on the 6th Floor of the United States Courthouse located at 350 W. 1st Street, Los Angeles, California 90012, Defendant KKR & Co. Inc. ("KKR") will and hereby does move this Court, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing each claim asserted against KKR in the First Amended Complaint of Plaintiffs-Relators United States of America, et al., ex rel. Caleb Hernandez, D.O., and Chionesu Sonyika, M.D ("Relators"). The Amended Complaint purports to allege violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and analogous state and municipal false claim laws. Dismissal is warranted because KKR is not a proper defendant, and Relators have not alleged the necessary facts to support their claims with the required particularity. Specifically, Relators have not adequately alleged that any Defendant submitted false claims or that any Defendant conspired with any other Defendant to file false claims. As Relators have already amended their complaint once in response to Defendants' motions to dismiss their initial pleading, further amendment would be futile. For these reasons, the First Amended Complaint should be dismissed in its entirety and with prejudice.

This motion is based on this Notice of Motion, KKR's Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings, records, and papers on file in this action, and such other and further oral argument or documentary evidence as may be presented at or before the hearing.

### LOCAL RULE 7-3 STATEMENT

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place by telephone on October 23, 2024.

## STATEMENT OF RELIEF SOUGHT

KKR respectfully requests dismissal with prejudice of all claims asserted against KKR in Relators' First Amended Complaint in their entirety pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

DATED:  November 15, 2024          Respectfully submitted,

**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**

By:  */s/ Joshua Hill*
      JOSHUA HILL
      535 Mission Street, 24th Floor
      San Francisco, CA 94105
      Telephone: (628) 432-5123
      Facsimile (628) 232-3090
      jhill@paulweiss.com

*Attorneys for Defendant*
*KKR & Co. Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

Page

I.    PRELIMINARY STATEMENT ......................................................... 1

II.   BACKGROUND ............................................................................. 3

    A.    Allegations as to KKR ......................................................... 3

    B.    Allegations as to the False Claims Act ................................. 4

    C.    Procedural History ............................................................... 4

III.  LEGAL STANDARDS .................................................................... 5

IV.   ARGUMENT .................................................................................. 5

    A.    KKR Is Not a Proper Defendant .......................................... 5

    B.    The Complaint Fails to State a Claim Against KKR ............. 6

        1.    Relators' allegations of specific involvement are insufficient. ............................................................... 7

        2.    Relators' collective allegations are insufficient to state a claim against KKR. ............................................ 10

        3.    Relators have not alleged any facts to support a veil piercing or alter ego theory of liability. ...................... 13

    C.    Relators' FCA Conspiracy Claim Should Be Dismissed ...... 14

    D.    The Amended Complaint Should Be Dismissed for the Reasons Set Forth in the Motions Filed by the Other Defendants ...... 17

    E.    As Relators Have Already Amended Their Complaint, the Amended Complaint Should Be Dismissed with Prejudice ............... 17

V.    CONCLUSION ............................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4  *United States* v. *Advanced Dermatology and Skin Cancer Specialists,*

5  *P.C.,*

6  2024 WL 1680074 (C.D. Cal. Feb 21, 2024) ................................................ 14, 16

7  *Allen* v. *City of Beverly Hills*,

8  911 F.2d 367 (9th Cir. 1990) ..................................................................... 17

9  *United States ex rel. Anita Silingo* v. *WellPoint, Inc.*,

10  904 F.3d 667 (9th Cir. 2018) ........................................................... 5, 10, 12

11  *Ashcroft* v. *Iqbal*,

12  556 U.S. 662 (2009) ................................................................................... 5

13  *United States* v. *Bestfoods*,

14  524 U.S. 51 (1998) ...................................................................................... 7

15  *Bly-Magee* v. *California*,

16  236 F.3d 1014 (9th Cir. 2001) ................................................................ 5, 14

17  *United States ex re. Wismer* v. *Branch Banking & Tr. Co*

18  2013 WL 5989312 (N.D. Tex. Nov. 12, 2013) ............................................... 9

19  *Brooks* v. *Gomez*,

20  2013 WL 496339 (N.D. Cal. Feb. 7, 2013) ................................................. 15

21  *United States* v. *CalPortland Constr.*,

22  2018 WL 6262877 (C.D. Cal. Mar. 9, 2018) ............................................... 14

23  *United States* v. *Corinthian Colls.*,

24  655 F.3d 984 (9th Cir. 2011) ....................................................................... 5

25  *United States* v. *Eisenhower Medical Center*,

26  2020 WL 6153103 (C.D. Cal. May 12, 2017) ............................................. 11

27

28

DEFENDANT KKR & CO. INC.'S MOTION TO DISMISS

*United States* v. *Ensign Group, Inc.*,

    2021 WL 9406134 (C.D. Cal. July 26, 2021) ................................................ 10, 12

*Winter ex. rel. United States* v. *Gardens Regional Hospital and Med.*

    *Ctr., Inc.*,

    953 F.3d 1108 (9th Cir. 2020) ................................................................................. 6

*Gastelum* v. *TJX Companies, Inc*.,

    2024 WL 2842195 (C.D. Cal. 2024) .................................................................... 18

*Gerritsen* v. *Warner Bros. Entertainment Inc.*,

    116 F. Supp. 3d. 1104 (C.D. Cal. 2015) ......................................................... 13, 14

*Glass* v. *Remondi*,

    2017 WL 698310 (E.D. Cal. Feb. 21, 2017) ........................................................ 5

*Gonzalez* v. *Fallanghina, LLC*,

    2016 WL 3951655 (N.D. Cal. July 22, 2016) ..................................................... 14

*Haddad* v. *Merck and Co., Inc*.,

    2022 WL 17357779 (C.D. Cal. Aug. 11, 2022) .................................................. 17

*United States ex rel. Jones* v. *Sutter Health*,

    2021 WL 3665939 (N.D. Cal. Aug. 18, 2021) ...................................................... 4

*United States ex rel. Jones* v. *Sutter Health*,

    2021 WL 3665939 (N.D. Cal. Aug. 18, 2021) .................................................... 10

*Kavehrad* v. *Vizio, Inc*.,

    2023 WL 2558535 (C.D. Cal. Jan. 26, 2023) .................................................... 13

*Laughlin* v. *Fresenius Med. Care Holdings, Inc.*,

    2023 WL 7093801 (E.D. Wash. Oct. 26, 2023) ............................................. 7, 13

*Bangkok Broadcasting & T.V. Co.ˎ Ltd. Ltd*. v. *IPTV Corp.*,

    742 F. Supp. 2d 1101 (C.D. Cal. 2010) ......................................................... 13, 14

*United States* v. *Marshall Med. Ctr.*,

    2015 WL 2235461 (E.D. Cal. May 12, 2015) .................................................... 14

*United States ex rel. Martinez* v. *KPC Healthcare Inc*.,

    2017 WL 10439030 (C.D. Cal. June 8, 2017)......................................................8

*Hascoet ex rel. United States* v. *Morpho S.A.*,

    770 Fed. Appx. 808 (9th Cir. 2019) .............................................................9, 12

*United States* v. *Pacific Dermatology Inst., Inc.*,

    2024 WL 3086586 (C.D. Cal. 2024) ..........................................................14, 17

*United States ex rel. Pecanic* v. *Sumitomo Elec. Interconnect Products*

    *Inc.*, 2013 WL 774177 (S.D. Cal. Feb. 28, 2013) ...........................................5, 7

*United States ex rel. Ruhe* v. *Masimo Corp.*,

    929 F. Supp. 2d 1033 (C.D. Cal. 2012)............................................................16

*United States* v. *Scan Health Plan*,

    2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) ...............................................2, 6, 9

*Sheppard* v. *Fantasia Trading LLC*,

    2024 WL 1916763 (C.D. Cal. Apr. 25, 2024).....................................................3

*Ticketmaster-Indiana* v. *Cavaliers Operating Company LLC*,

    2008 WL 11383269 (C.D. Cal. Jan. 11, 2008)..................................................17

*US Airline Service, LLC* v. *Electronic Commerce, LLC*,

    2022 WL 19914520 (C.D. Cal. Dec. 9, 2022) ..................................................13

*Gharibian ex rel. United States* v. *Valley Campus Pharmacy, Inc.*,

    2023 WL 195514 (9th Cir. Jan. 17, 2023)...........................................................5

*Zucco Partners, LLC* v. *Digimarc Corp.*,

    552 F.3d 981 (9th Cir. 2009) ...............................................................................6

**Statutes**

31 U.S.C. § 3730...................................................................................................4

**Other Authorities**

Fed. R. Civ. Proc. 9(b)...................................................................................*passim*

Defendant KKR & Co. Inc. ("KKR") respectfully submits this memorandum in support of its motion to dismiss the claims asserted against KKR in Caleb Hernandez's and Chionesu Sonyika's (the "Relators") *qui tam* First Amended Complaint ("Amended Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    PRELIMINARY STATEMENT

KKR and the other Defendants in this action moved to dismiss the Relators' original Complaint on multiple grounds.  Rather than try to defend that pleading, Relators filed an Amended Complaint.  The Amended Complaint, however, suffers from the same deficiencies as the original Complaint, and the claims it asserts against KKR should be dismissed for multiple reasons.

*First*, KKR is not a proper party.  The Relators' claims concern alleged "up coding" and other allegedly fraudulent billing practices by EmCare Holdings, Inc. and Reimbursement Technologies, Inc., two wholly owned operating subsidiaries of Envision Healthcare Corporation ("Envision").    Am. Compl. ¶¶ 16, 18. Relators' claims against KKR are premised on their allegation that Envision was a "wholly-owned" subsidiary of KKR.  *Id.* at ¶ 14.  Not so.  Envision was 100% owned by Enterprise Intermediate Holdings Inc., an entity not even mentioned in the Amended Complaint, which in turn was owned by another entity not identified in the Amended Complaint, Enterprise Parent Holdings Inc., which in turn was owned by yet another entity not named in the Amended Complaint, KKR Enterprise Aggregator L.P.  *See* Exs. A & B.  KKR was not directly or indirectly a majority owner of any of these companies.

We raised this issue in our motion to dismiss the original Complaint, but Relators have simply reasserted the same allegations without showing that KKR in fact owns any of the companies purportedly involved in their claims.  KKR should be dismissed from the Amended Complaint on this ground alone.

*Second*, even if KKR did own Envision (which it did not), the claims against KKR in the Amended Complaint still fail, because Relators do not allege a single fact purportedly showing that KKR or any KKR employee violated the False Claims Act ("FCA") or engaged in any wrongdoing.  They do not allege that KKR worked with or through other companies to cause false claims to be presented for payment, as required for liability under the FCA, and do not allege any overlap of officers and board members between KKR and any of the companies allegedly involved in the schemes.  The Amended Complaint, therefore, does not satisfy Rule 9(b), because it does not "identify the role of each defendant in the alleged fraudulent scheme."  *United States* v. *Scan Health Plan*, 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017).

The Relators try to paper over this deficiency by alleging (falsely) that Envision was a "wholly-owned subsidiary" of KKR, and by lumping KKR together with Defendants Envision, EmCare Holdings, Inc., EmCare, Inc., and Reimbursement Technologies, Inc. under the single, defined term "EmCare."  Both of these tacks fail.

As discussed above, Envision was not a wholly owned subsidiary of KKR. Even if it were, a parent company generally is not liable for the acts of its subsidiaries, and Relators' conclusory allegations concerning KKR's purported involvement with Envision are insufficient to hold KKR liable.  And courts have consistently held that merely lumping defendants together and referring to them jointly does not comply with the requirement to plead fraud with specificity, where—as here—the lumped-together defendants are not alleged to have engaged in precisely the same conduct.

*Third*, Relators' purported FCA conspiracy claim, which also must be pled with particularity under Rule 9(b), fails for the same reasons.  The Amended Complaint does not allege the existence of an actual agreement between any of the Defendants to defraud the government, as required to adequately plead a

conspiracy.  Relators' conclusory allegations and buzzwords (like, "conspiring" and "conspiracy") do not allege the "who, what, when, where, and how" of the alleged conspiracy as Rule 9(b) requires.

Thus, the Amended Complaint should be dismissed in its entirety, with prejudice, as to KKR, for these reasons and those set forth in the motions filed by co-Defendants, which we incorporate by reference herein.

## II.    BACKGROUND[1]

### A.    Allegations as to KKR

Relators allege that KKR "is a global investment company that manages multiple alternative asset classes, including private equity, energy, infrastructure, real estate, credit, and, through its strategic partners, hedge funds [and] conducts business in part through its wholly-owned subsidiary, Envision."  Am. Compl. ¶ 14.  Relators further allege in conclusory fashion that KKR "becomes a 'trusted partner'" with its alleged portfolio companies, like Envision.  *Id.* at ¶ 160.  They further allege—without alleging any facts to support it—that KKR was involved in Envision's billing practices, and that Envision could not resist KKR's alleged directives.  *Id.*  In addition, Relators state that KKR's co-Chief Executive Officers were knowledgeable about Envision's billing practices, again without alleging any supporting facts and without alleging how Relators came to know that the KKR co-CEOs were purportedly knowledgeable about such practices.  *Id.*  Aside from these attenuated and unsupported allegations, the Amended Complaint contains no allegations tying KKR in any way to any of the "upcoding" or other purportedly fraudulent billing practices the Amended Complaint alleges.

---

[1]   On this motion to dismiss, KKR accepts as true all material allegations in the complaint, but not allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," or that "contradict facts that may be judicially noticed."  *Sheppard* v. *Fantasia Trading LLC*, 3, at *4 (C.D. Cal. Apr. 25, 2024).

1

### B.    Allegations as to the False Claims Act

Relators allege that, for almost 20 years, Defendants have engaged in three interconnected schemes to submit false claims to the Centers for Medicare and Medicaid Services ("CMS"), state Medicaid programs, and to federal, state and municipal employees health care programs and plans by "up-cod[ing]/up-charg[ing]" and "fraudulently billing":  (i) the "Scribe Scheme," (ii) the "Critical Care Scheme," and (iii) the "Mid-Level Scheme."  *Id.* at ¶¶ 2-5.

Relators allege that, in the Scribe Scheme, medical scribes from ScribeAmerica were directed to add additional treatments to patients' charts regardless of whether those treatments were actually provided.  *Id.* at ¶¶ 195-213. They allege that the Critical Care Scheme involved instructing scribes to up-code for critical care services that were either not provided or not medically necessary, to obtain higher reimbursement than standard emergency care.  *Id.* at ¶¶ 214-250. They allege that the Mid-Level Scheme involved using physician National Provider Identifiers (or "NPIs") to submit reimbursement claims for work allegedly performed by non-physicians, such as physician's assistants or nurse practitioners. *Id.* at ¶¶ 251-292.

Aside from a vague and conclusory mention of KKR's co-CEOs—purportedly the "who" of Relators' allegations against KKR—the Amended Complaint does not allege the "what, when, where, and how" of the co-CEO's purported involvement or of the involvement of KKR or any other KKR employees in these alleged schemes.

### C.    Procedural History

The FCA requires that relators first file their complaint under seal, to allow the federal government to decide whether to join in the action as a plaintiff. 31 U.S.C. § 3730.   Relators here followed that procedure, and the federal government decided not to intervene.  (Dkt. 38.)  Following the government's decision not to intervene, Relators served Defendants with the Complaint.  On

September 23, 2024, Defendants, including KKR, moved to dismiss the Complaint. (Dkt. 105.)  Rather than respond to the motions and defend their original pleading, Relators filed an Amended Complaint on October 15, 2024.  (Dkt. 123.)  This Motion followed.

## III.   LEGAL STANDARDS

To survive a motion to dismiss, Relators must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Moreover, "[a] plaintiff must plead FCA claims with particularity under Federal Rule of Civil Procedure 9(b)," which "requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged."  *Gharibian ex rel. United States* v. *Valley Campus Pharmacy, Inc.*, 2023 WL 195514, at *1 (9th Cir. Jan. 17, 2023).  Additionally, the pleading must satisfy Rule 9(b) as to each defendant; a plaintiff cannot rely on allegations regarding one defendant to satisfy pleading standards as to another.  *See United States* v. *Corinthian Colls.*, 655 F.3d 984, 997-1000 (9th Cir. 2011); *United States ex rel. Anita Silingo* v. *WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018); *United States ex rel. Pecanic* v. *Sumitomo Elec. Interconnect Prod. Inc.*, 2013 WL 774177, at *4 (S.D. Cal. Feb. 28, 2013).  If a complaint is not pled with the requisite Rule 9(b) particularity, it should be dismissed.  *Bly-Magee* v. *California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## IV.   ARGUMENT

### A.   KKR Is Not a Proper Defendant

When it is demonstrated that a plaintiff has named the wrong defendant, that defendant should be dismissed from the lawsuit.  *See Glass* v. *Remondi*, 2017 WL 698310, at *2 (E.D. Cal. Feb. 21, 2017) (granting motion to dismiss when Plaintiffs "appear[ed] to have named the wrong defendant").  That is the case here.  Contrary

to what Relators allege (Am. Compl. ¶ 14), Envision was never the "wholly-owned subsidiary" of KKR.  Rather, as publicly filed court records show, Envision was the wholly owned subsidiary of a company called Enterprise Intermediate Holdings Inc., which in turn was a subsidiary of another entity, Enterprise Parent Holdings Inc.  *See* Hill Decl. Ex. B at 177.  Enterprise Parent Holdings, Inc. was owned primarily by KKR Enterprise Aggregator L.P., another entity that is not a party to this action.  *See* Hill Decl. Ex. A at 8.

*Ex. B*

KKR, the named defendant, was not a majority owner of any of those companies.

Relators do not dispute these facts or cure this deficiency in the Amended Complaint, even though KKR briefed this argument in its motion to dismiss the original Complaint.  *See Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (ruling that the failure to correct previously noted deficiencies in an amended complaint is "a strong indication that the plaintiffs have no additional facts to plead.").  These facts, as shown in publicly filed court papers, are thus undisputed and show that Relators are simply wrong in alleging that Envision was a wholly owned subsidiary of KKR.[2]  KKR is thus not a proper party, and all of the claims asserted against KKR should be dismissed with prejudice on this ground alone.

### B.    The Complaint Fails to State a Claim Against KKR

In addition, the Amended Complaint falls well short of adequately alleging that KKR has violated the FCA or any of the analogous state laws.  Under the FCA, "[a] plaintiff must allege: '(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing, (4) the government to pay out money or forfeit moneys due.'"  *Winter ex. rel. United States* v. *Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020).  A plaintiff must

---

[2]  *See* KKR's concurrently filed Request for Judicial Notice.

also state "clearly how each and every defendant is alleged to have violated plaintiffs' legal rights." *Scan Health Plan*, 2017 WL 4564722, at *7.

The Amended Complaint does not meet these standards in regard to KKR, as none of the allegations tie KKR or any of its employees to the "upcoding" or other purportedly fraudulent billing practices the Amended Complaint alleges.

The allegation that Envision was a wholly owned subsidiary of KKR is not only false, but, even if assumed true, insufficient to allege liability as to KKR. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998) (citations omitted). "As a general matter, a parent company and a subsidiary are considered separate entities, and thus a parent company may not be held responsible for the liability created by its subsidiaries." *Laughlin* v. *Fresenius Med. Care Holdings, Inc.*, 2023 WL 7093801, at *2 (E.D. Wash. Oct. 26, 2023). "The law views these entities as separate unless it can be shown that a parent company and a subsidiary are 'not really separate entities' but rather that a subsidiary is simply an 'alter ego' of the parent company." *Id*.

In order to survive a motion to dismiss, the "Relator[s] must either properly allege liability" for KKR "under an alter ego theory or demonstrate that each entity is liable for its own role in the submission of false claims or statements." *Sumitomo Elec. Interconnect Prod. Inc.*, 2013 WL 774177, at *5; *see also United States ex rel. Hockett* v. *Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 60 (D.D.C. 2007) (same). Relators do not make either showing.

### 1. Relators' allegations of specific involvement are insufficient.

The Amended Complaint lacks any substantive allegation linking KKR to the alleged schemes. Rather, it makes only conclusory allegations that are true of

nearly every parent-subsidiary relationship and that are insufficient to establish (alleged) parent company liability.

Thus, for example, Relators allege that KKR becomes a "trusted partner" with the companies in which it invests, "wherein it actually works with its companies to achieve what it considers operational excellence, which it does through familiarizing itself with their efforts to a level of expertise and then providing expertise and consulting to those companies, leading them to change their operations so as to increase its return on investment to KKR." Am. Compl. ¶ 160. Relators further allege that "[d]uring the time of its ownership and control of Envision Healthcare Corporation, it was known in the EmCare community that the EmCare community could not rebuff or refuse KKR's dictates, consulting, or expertise on a subject, and that KKR ran operations from the top down through expertise, consulting and guidance that could not be refused." *Id.*

These broad allegations do not show any *specific* involvement by KKR in the purportedly fraudulent billing practices or alleged schemes.

Relators also do not allege with specificity that KKR became aware of the schemes before its purported acquisition of Envision or that it became an active participant in these schemes afterward. Relators allege that "Envision Healthcare Corporation included these billing practices and other unsavory billing practices *before* KKR's acquisition of Envision Healthcare Corporation," and broadly assert, without alleging any supporting facts, that "the problems associated with such billing have intensified after KKR's acquisition." *Id.* Such bald, conclusory allegations are not sufficient to state a claim for relief. *United States ex rel. Martinez* v. *KPC Healthcare Inc.*, 2017 WL 10439030, at *6 (C.D. Cal. June 8, 2017) (holding that "[m]erely '[b]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation").

The pleading deficiencies here are glaring.  The Amended Complaint does not allege any communications or documents tying KKR to the alleged misconduct, does not explain the role of any KKR employees in the alleged schemes, and does not allege that any KKR officials are officers and board members of the companies allegedly involved in the purportedly fraudulent billing practices.  Instead, the Amended Complaint "is a classic 'shotgun pleading' that wholly fails to state 'clearly how each and every defendant is alleged to have violated plaintiffs' legal rights.'" *Scan Health Plan*, 2017 WL 4564722, at *7.

Here, as in *Scan Health Plan*, the majority of the allegations in the Amended Complaint refer to the Defendants as if they were a single collective entity and make conclusory assertions about them unsupported by any factual allegations.  Thus, for example, Relators allege that "KKR was specifically and intimately involved in the billing practices and billing-related operations of the other EmCare Defendants," but they fail to provide any factual support showing the alleged "specific[] and intimate[]" involvement, much less show involvement in the specific billing practices that Relators allege were fraudulent.  Am. Compl. ¶ 160.

Similarly, Relators allege that Joseph Bae and Scott Nuttall, the Co-Chief Executive Officers of KKR, "oversaw the top-down involvement of KKR in its subsidiaries" and are "knowledgeable as to KKR's involvement in the billing practices."  *Id*. at ¶ 160(b).  But they allege no facts to support those allegations, such as any communications with them or reports they were aware of, or other facts showing their actual involvement in or even awareness of the allegedly fraudulent billing practices.  Moreover, Relators allege absolutely no source for their purported knowledge about KKR whatsoever or support showing how they came to learn of KKR's supposed role in the fraud.  *See United States ex rel. Wismer* v. *Branch Banking & Tr. Co.*, 2013 WL 5989312, at *6 (N.D. Tex. Nov. 12, 2013) (when a relator claims to have "learned" a fact, the relator  "is required to identify the document he may have referenced or otherwise explain how he 'learned' this fact").

Because the Amended Complaint does not "identify the role of each defendant"—here, KKR—"in the alleged fraudulent scheme," it fails to satisfy Rule 9(b). *Scan Health Plan*, 2017 WL 4564722, at *7.

> **2.** **Relators' collective allegations are insufficient to state a claim against KKR.**

"Rule 9(b) . . . requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Hascoet ex rel. United States* v. *Morpho S.A.*, 770 F. Appx. 808, 809–10 (9th Cir. 2019) (quoting *Corinthian Colls.,* 655 F.3d at 997–98). The Amended Complaint does not meet that requirement. Rather than making allegations against KKR with the specificity required by Rule 9(b), Relators lump KKR, Envision, EmCare Holdings, Inc., EmCare, Inc., and Reimbursement Technologies, Inc. together under a single defined term— "EmCare" (Am. Compl. ¶ 1)—and thereafter refer to them as if they were a single entity. Such joint, non-specific allegations against differently situated defendants are insufficient. *See United States ex rel. Jones* v. *Sutter Health*, 2021 WL 3665939, at *8-9 (N.D. Cal. Aug. 18, 2021) (dismissing FCA claims "[b]ecause Relator lumps Defendants together without alleging how each Defendant was involved in the alleged fraud," and therefore "Relator fails to state a claim under Rule 9(b).").

Indeed, Ninth Circuit case law is clear that, under Rule 9(b), such group pleading is sufficient only for defendants who are alleged to have ***the exact same role*** in the purported fraud. *WellPoint, Inc.*, 904 F.3d at 677–78. It is only when there is "no reason (and no way) . . . to differentiate among those allegations that are common to the group" that group pleading is allowed. *Id.* at 678.

*United States* v. *Ensign Group, Inc.*, another FCA case in which the government declined to intervene, is instructive. 2021 WL 9406134, at *3 (C.D. Cal. July 26, 2021). That case involved allegations that Ensign Group, a nursing

facilities owner, violated the FCA through the payment and receipt of kickbacks. There, as here, the relators sought to hold Ensign Group liable for the alleged actions of subsidiary companies through the use of collective pleading.  The court stated that "[c]ollective pleading is appropriate only 'where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged *in precisely the same conduct*.'" *Id.* (quotation omitted) (emphasis added). Accordingly, the court dismissed the case when those relators sought to rely upon a joint term to allege FCA violations against a parent holding company and its subsidiary.  *Id.* at *4.  The court emphasized that "[a]dequately pleading a claim under the FCA and CFCA against a parent corporation, rather than its subsidiary, requires identifying specific actions taken by that parent company." *Id.* at *3.

In *United States* v. *Eisenhower Medical Center*, the court rejected a similar effort to rely upon group pleading in an FCA case.  2020 WL 6153103, at *5 (C.D. Cal. May 12, 2020).  The Court emphasized that "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme."  *Id. (*quoting *Corinthian Colls.,* 655 F.3d at 997–98).  Accordingly, the Court determined that "Relator's repeated references to 'Eisenhower'" to jointly refer to two separate entities "violate[d] Rule 9(b)." *Id.*

Relators' own allegations show that their lumping together of KKR with the other Defendants as "EmCare" does not pass muster under Rule 9(b) and the cases cited above.  Relators have not alleged—and cannot allege—that KKR engaged in "precisely the same conduct" as the other defendants defined as "EmCare." Relators allege that KKR "is a global investment company," while the "EmCare" Defendants are alleged to be "a medical billing business."  Am. Compl. ¶¶ 14, 160. Relators do not allege that KKR performs billing or coding or the furnishing of medical services, or that each of the other entities that they lump together as "EmCare" have engaged in "precisely the same conduct," either.  Relators claim

RTI performs billing and coding, without alleging RTI furnishes any medical care, and vaguely allege that one or more of the other three Envision defendants furnish medical care without specifying which Envision entities furnish that care. *Id.* at ¶ 18.

The Amended Complaint is also filled with collective allegations that cannot apply to every entity that Relators lump together as "EmCare," given the entities' different alleged roles. These include allegations such as: "EmCare personnel are responsible for calling up physicians and mid-level providers, sending them e-mails or other communications, and forcing them to make these attestations" (*id.* at ¶ 82); and "EmCare sends to its billing staff a redacted version of the chart that eliminates this important information from the record." (*Id.* at ¶ 99.) None of these allegations can apply to KKR, which is a "global investment company" and not "a medical billing business." Relators' failure to distinguish between defendants highlights the inadequacy of their group pleading, as they fail to "'identify the role of each defendant in the alleged fraudulent scheme.'" *Silingo*, 904 F.3d at 677 (quoting *Swartz* v. *KPMG LLP*, 476 F.3d 756, 765 (9th Cir 2007)).

The Relators' reliance on their false allegation of a parent-subsidiary relationship between KKR and Envision also fails. To establish claims against the parent of a subsidiary, Relators must "identify[] specific actions taken by [the] parent company" and cannot rely upon a joint term that does not differentiate between the actions of the parent and the subsidiary. *Ensign Grp., Inc.*, 2021 WL 9406134, at *3. The Amended Complaint does not allege that KKR played any role in, endorsed, or had anything whatsoever to do with the underlying alleged fraudulent activity. In fact, rather than alleging any role for KKR in Relators' alleged schemes, the Amended Complaint merely alleges, in conclusory fashion, that KKR "had the power to stop these billing practices, though [sic] becoming familiar with them to a level of expertise." Am. Compl. ¶ 160(c). Relators' failure to describe specific actions taken by KKR is dispositive. *See Ensign Grp., Inc.*,

2021 WL 9406134, at *3 ("Adequately pleading a claim under the FCA and CFCA against a parent corporation, rather than its subsidiary, requires identifying specific actions taken by that parent company."); *see also Hascoet ex rel. Morpho S.A.*, 770 Fed. Appx. at 809–10 (quoting *Corinthian Colls.,* 655 F.3d at 997–98).

Thus, Relators' reliance on collective pleading and conclusory allegations are insufficient to allege liability in regard to KKR.

### 3.    Relators have not alleged any facts to support a veil piercing or alter ego theory of liability.

Relators have also failed to allege conduct that would justify piercing the corporate veil in order to hold KKR liable for the acts of any other Defendant. "As a general matter, a parent company and a subsidiary are considered separate entities, and thus a parent company may not be held responsible for the liability created by its subsidiaries." *Fresenius Medical Care Holdings, Inc.*, 2023 WL 7093801, at *3. Accordingly, "[o]nly in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary." *Bangkok Broadcasting & T.V. Co., Ltd*. v. *IPTV Corp.*, 742 F. Supp.2d 1101, 1120 (C.D. Cal. 2010).

Generally, these unusual circumstances are "(1) where the circumstances of the organization of the two entities are such that the corporate form should be disregarded (often referred to as 'alter ego' liability); (2) where the subsidiary acts as an agent of the parent corporation; and (3) where the parent corporation aids, abets or ratifies the acts of the subsidiary corporation." *Id.* In order to establish alter ego liability, Relators must allege "the parent company exerts such control that it 'dictates every facet of the subsidiary's business.'" *Fresenius Med. Care Holdings, Inc.*, 2023 WL 7093801, at *2. "Conclusory allegations of 'alter ego' status are insufficient to state a claim." *Gerritsen* v. *Warner Bros. Entertainment Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015).

Accordingly, in order to establish alter ego liability, Relators must "tell the story about what happened, when, and how" and not merely provide "legalese and formulaic recitations of the elements supporting alter ego liability." *US Airline Service, LLC* v. *Electronic Commerce, LLC*, 2022 WL 19914520, at *5 (C.D. Cal. Dec. 9, 2022) (quoting *Gonzalez* v. *Fallanghina, LLC*, 2016 WL 3951655, at *4 (N.D. Cal. July 22, 2016) (quotation marks omitted)); *Kavehrad* v. *Vizio, Inc*., 2023 WL 2558535, at *5 (C.D. Cal. Jan. 26, 2023) (same).

The Amended Complaint does not contain any allegations at all that justify disregarding the corporate form here. Relators fail to allege KKR controls any other Defendant with any specificity, let alone that KKR "dictates every facet of" any Defendant's business. *Fresenius Med. Care Holdings, Inc.*, 2023 WL 7093801, at *2. Similarly, Relators do not allege that any Defendant is an agent of KKR nor do they allege that KKR ever aided, abetted or ratified any other Defendant's alleged acts. *IPTV Corp.*, 742 F. Supp. 2d. at 1120. Rather, Relators rely upon a few conclusory and formalistic allegations—limited to buzzwords of "control" and "top-down involvement"—contained within a single paragraph of the Amended Complaint. *See* Am. Compl. ¶ 160. Such generalized allegations fall far short of the required specificity to pierce the corporate veil. *See, e.g.*, *Gerritsen*, 116 F. Supp. at 1136; *US Airline Service, LLC*, 2016 WL 3951655, at *5.

**C.     Relators' FCA Conspiracy Claim Should Be Dismissed**

"To state a claim under the FCA for conspiracy, a plaintiff must show that (1) the defendant agreed with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) one or more conspirators performed any act to effect the object of the conspiracy; and (3) the United States suffered damages as a result." *United States* v. *Advanced Dermatology and Skin Cancer Specialists, P.C.*, 2024 WL 1680074, at *10 (C.D. Cal. Feb 21, 2024) (quoting *United States* v. *B&H Educ. Inc.,* 2015 WL 13919323, at *4 (C.D. Cal. Aug. 24, 2015)); *United States* v. *Pacific Dermatology Inst., Inc.*,

2024 WL 3086586, at *12 (C.D. Cal. May 16, 2024) (same). Additionally, as with the underlying FCA violations, Relators' FCA conspiracy claim must satisfy the heightened pleading standards of Rule 9(b) to survive a motion to dismiss. *See United States* v. *CalPortland Constr.*, 2018 WL 6262877, at *5 (C.D. Cal. Mar. 9, 2018) ("[t]he FCA requires conspiracy to be pled with particularity . . . and that each defendant's role in unlawful conduct be specifically alleged[.]"); *United States* v. *Marshall Med. Ctr.*, 2015 WL 2235461, at *2 (E.D. Cal. May 12, 2015) ("Federal Rule of Civil Procedure 9(b) governs allegations of making or conspiring to make false claims in violation of the FCA and CFCA."); *Bly-Magee*, 263 F. 3d at 1018 (holding that "complaints brought under the FCA must fulfill the requirements of Rule 9(b)."). Relators have failed to meet this standard.

First, the Amended Complaint is devoid of any allegations supporting a conspiracy. Relators' conspiracy claim is based on the unsupported assertion that "EmCare could not have fully executed the three schemes described above without conspiring with ScribeAmerica (*in addition to the evident concerted action and the admissions of practices that include becoming thought partners, etc.*), who provided also training related to the schemes and ensured scribe compliance with the schemes . . . and without its concerted action with RTI, wherein RTI executed the billing consistent with and without questioning those schemes[.]" Am. Compl. ¶ 292 (emphasis in original). That allegation, however, falls well short of showing an intentional, common design between any Defendants to enter into a common agreement to submit false claims and defraud the relevant governmental agencies.

The Relators' other allegations are similarly deficient. Thus, for example, Relators allege what they label "representative examples of false charts and billings," but fail to plead any agreement between any Defendants to submit false claims. *See Brooks* v. *Gomez*, 2013 WL 496339, at *8 (N.D. Cal. Feb. 7, 2013) ("Where a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more

DEFENDANT KKR & CO. INC.'S MOTION TO DISMISS

than conclusory allegations of conspiracy, and a plaintiff must allege with sufficient particularity that defendants reached some explicit or tacit understanding or agreement."); *Advanced Dermatology and Skin Cancer Specialists, P.C.*, 2024 WL 1680074, at *14 (dismissing FCA conspiracy claim when "Relator fail[ed] to allege the existence of either an express or implied agreement, and instead offers only [a] conclusory allegation.").

Relators allege that ScribeAmerica scribes were trained in "the EmCare way" and "ScribeAmerica worked as a thought partner with EmCare in making sure that scribes placed in medical charts the deceptive information EmCare needed to falsely bill." Am. Compl. ¶ 55. Those allegations, too, however, fall well short of alleging an actual agreement to commit fraud.

Relators also allege that "ScribeAmerica, LLC and EmCare partnered to classify physician reticence to up-code and to illegally attest to critical care, along with physician reticence to falsely document mid-level services for billing purposes, as productivity losses and performance gaps, even employing the term 'down-coding' in an effort to demonize physician reticence and refusal to up-code," which, they assert, "does not just show concerted action, but [] also shows agreement." *Id.* at ¶ 153. That allegation, too, however, is insufficient. A complaint does not adequately allege an FCA conspiracy absent "specific allegations of awareness of wrongdoing sufficient to give rise to an inference that the parties struck some sort of agreement to defraud the government," *Advanced Dermatology and Skin Cancer Specialists, P.C.*, 2024 WL 1680074, at *14—allegations that are glaringly absent here.

Furthermore, to the extent Relators seek to assert a conspiracy between any Defendants and their alleged affiliates, the intracorporate conspiracy doctrine bars conspiracy claims against parents, subsidiaries, affiliates, and agents of the same corporation. *See, e.g.*, *United States ex rel. Ruhe* v. *Masimo Corp.*, 929 F. Supp. 2d 1033, 1037–38 (C.D. Cal. 2012)

(dismissing a FCA conspiracy claim under the intracorporate conspiracy doctrine).    This is true in the FCA context, as well.    *See, e.g.*, *Pacific Dermatology Institute, Inc.*, 2024 WL 3086586, at *13 (applying the intracorporate conspiracy doctrine to a FCA conspiracy claim as "[t]he Court cannot identify any authority—nor does Relator point to any—that rejects the application of the intracorporate conspiracy doctrine in the FCA context"). Accordingly, any effort to assert a conspiracy between KKR and Envision (even accepting the false allegation of a parent-subsidiary relationship as true) or between any other Defendants in a parent-subsidiary relationship should be rejected.

### D.    The Amended Complaint Should Be Dismissed for the Reasons Set Forth in the Motions Filed by the Other Defendants

KKR also joins in and incorporates by reference the arguments for dismissing the Amended Complaint made in the briefs filed by the other Defendants.    Courts in this district have recognized, and even encouraged, incorporating co-defendants' arguments by reference.    *Haddad* v. *Merck and Co., Inc.*, 2022 WL 17357779, at *10 (C.D. Cal. Aug. 11, 2022) (noting the parties "need not repeat arguments in every brief that are common to all or multiple parties—they can incorporate arguments made in a lead brief by reference"); *Ticketmaster-Indiana* v. *Cavaliers Operating Company LLC*, 2008 WL 11383269, at *3 (C.D. Cal. Jan. 11, 2008) (considering arguments incorporated by reference).

### E.    As Relators Have Already Amended Their Complaint, the Amended Complaint Should Be Dismissed with Prejudice

Finally, the Amended Complaint should be dismissed with prejudice and without leave to amend, because Relators have already amended their complaint and further amendment would be futile.    The Ninth Circuit has held that a "district court's discretion to deny leave to amend is particularly broad where plaintiff has

previously amended the complaint.'" *Allen* v. *City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

In *Allen*, the Ninth Circuit affirmed a district court's dismissal of appellant's claim and denial of appellant's motion for leave to amend his complaint, explaining that "a district court does not 'abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts . . . and 'provided no satisfactory explanation for his failure to fully develop his contentions originally.'" *Id.* at 374 (quoting *Vincent* v. *Trend Western Technical Corp.*, 828 F.2d 563, 570-71 (9th Cir. 1987); *see also Gastelum* v. *TJX Companies, Inc.*, 2024 WL 2842195, at *6 (C.D. Cal. 2024) (dismissed amended complaint with prejudice on futility grounds, because the Plaintiff already "had two opportunities to allege his claims against Defendant and [] failed to do so[.]").

Those are precisely the circumstances here. Relators have not addressed the deficiencies in their original complaint and have provided no satisfactory explanation for their failure to fully develop their contentions originally. Therefore, any further amendment would be futile, and the Court should dismiss the Amended Complaint with prejudice.

## V. CONCLUSION

For the reasons stated above, and the reasons stated in the other Defendants' motions to dismiss, the Court should dismiss all of the claims asserted against KKR in the Amended Complaint in their entirety, with prejudice.

DATED: November 15, 2024               Respectfully submitted,

                                       **PAUL, WEISS, RIFKIND,**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WHARTON & GARRISON LLP**

By: _/s/ Joshua Hill_
  JOSHUA HILL
  535 Mission Street, 24th Floor
  San Francisco, CA 94105
  Telephone: (628) 432-5123
  Facsimile (628) 232-3090
  jhill@paulweiss.com

_Attorneys for Defendant_
_KKR & Co. Inc._

-19-                Case No. 2:21-cv-04324-FLA-AS

## **CERTIFICATE OF COMPLIANCE**

I, Joshua Hill, counsel of record for Defendant KKR & Co. Inc. ("KKR"), certify that this brief contains 5,732 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 15, 2024        Respectfully submitted,


By: */s/ Joshua Hill*
JOSHUA HILL

DEFENDANT KKR & CO. INC.'S MOTION TO DISMISS