BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
FRANK D. KORTUM, AUSA
California State Bar No. 110984
Room 7516, Federal Building
300 N. Los Angeles Street
Los Angeles, California 90012
Tel: (213) 894-6841
Fax: (213) 894-7819
Email: Frank.Kortum@usdoj.gov
JAMIE ANN YAVELBERG
ANDY MAO
JOHN F. SCHIFALACQUA
Attorneys, Civil Division
    U.S. Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044
    Tel: (202) 616-4309
    Fax: (202) 616-3085
    Email: John.f.schifalacqua@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.* *ex rel.* CALEB HERNANDEZ, D.O., and CHIONESU SONYIKA, M.D., <br><br>Plaintiffs, <br><br>v. <br><br>SCRIBEAMERICA, LLC, et al., <br><br>Defendants. | No. CV 21-04324-FLA-AS <br><br> STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA RE CONSTITUTIONALITY ISSUE RAISED IN MOTION BY ENVISION DEFENDANTS TO DISMISS RELATORS' FIRST AMENDED COMPLAINT <br><br> DATE: January 31, 2025 <br> TIME: 1:30 P.M. <br> CTRM: First Street Courthouse <br>       Courtroom 6B <br>       350 W. 1st St., 6th Floor <br>       Los Angeles, CA  90012 |

## I. INTRODUCTION

The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, is the federal government's primary tool to combat fraud and recover losses due to fraud in federal programs.[1] Accordingly, the United States has a substantial interest in the proper interpretation of the FCA.[2] The United States also administers the Medicare and Medicaid programs, and therefore has a substantial interest in the proper interpretation of the statutes, regulations and guidance that govern these programs.

The United States accordingly submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[3] to address arguments relating to the constitutionality of the FCA's *qui tam* provisions. These arguments are specifically asserted by the Defendant Envision Healthcare Corporation and related defendants (collectively, "Envision") in a motion to dismiss the Relators' first amended complaint.[4] ECF 140 at p. 17 n.6.[5] The United States takes no position on the other arguments raised in the three motions to dismiss

---

[1] *See, e.g.*, *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993).

[2] *See, e.g.*, *United States ex rel. Calilung v. Ormat Industries, Inc.*, No. 3:14-cv-00325-RCJ-VPC, 2015 WL 1321029 at *6 n.9 (D. Nev. March 24, 2015).

[3] 28 U.S.C. § 517 authorizes the Attorney General of the United States to attend to the interests of the United States in any action in federal or state court. The United States is not a party to this action because it has not intervened in this False Claims Act ("FCA") suit. Nevertheless, the United States remains the real party in interest in this action. *See* 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–35 (2009).

[4] Because the United States is not a party to this action (*Eisenstein*, 556 U.S. at 934), Envision was required to file and serve the Notice of Constitutional Question required by Rule 5.1 of the Federal Rules of Civil Procedure. Accordingly, if the court does not plan to reject the constitutional challenge, the United States requests that the court certify the question to the Attorney General pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(a) so that the Attorney General has the opportunity to consider whether to intervene in the action. *See* Fed. R. Civ. P. 5.1(c) (district court can "reject [a] constitutional challenge" without affording the government an opportunity to intervene, but cannot "enter a final judgment holding [a] statute unconstitutional" without providing that opportunity).

[5] Page citations in this Statement of Interest to documents in the record refer to pagination assigned by PACER/ECF (appearing at the top of each page).

1

now pending before this Court.

## II. ENVISION'S SUGGESTION THAT THIS COURT "REVISIT" BINDING NINTH CIRCUIT PRECEDENT IS PROCEDURALLY IMPROPER.

Envision asserts (in a four-line footnote (ECF 140 at p. 17 n.1)) that the *qui tam* provisions of the FCA are unconstitutional. Citing a grand total of two non-binding authorities,[6] Envision suggests that the Court "revisit" the Ninth Circuit's longstanding holding in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993).[7] ECF 140 at p. 17 n.1. Envision's conclusory challenge is incorporated by reference in general terms by the other defendants. *See* ECF 137 at 28:19-21 (ScribeAmerica motion); ECF 138 at 24:13-15 (KKR motion).

Envision's suggestion that this Court "revisit" *Kelly* lacks both substantive and procedural merit. With respect to procedure, a district court "must adhere to a holding of the Ninth Circuit until it is overruled." *Brewster v. County of Shasta*, 112 F.Supp.2d 1185, 1191 (E.D. Cal. 2000), *aff'd on other grounds*, 275 F.3d 803 (9th Cir. 2001). As will be shown below, this Court cannot declare the *qui tam* provisions of the FCA unconstitutional in the face of controlling authority to the contrary issued by the Ninth Circuit and the Supreme Court. Because existing law supports the constitutionality of the FCA's *qui tam* provisions, Envision's suggestion that this Court "revisit" *Kelly* is at best an inappropriate distraction.

## III. THE FCA'S *QUI TAM* PROVISIONS ARE CONSTITUTIONAL.

Even if an *en banc* panel of the Ninth Circuit were to "revisit" *Kelly*, it would in all likelihood reject Envision's conclusory constitutional challenge in favor of *Kelly's* reasoned conclusion that the "*qui tam* provisions of the [FCA] do not conflict with

---

[6] Specifically, Envision cites *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024), and the dissenting opinion of Justice Thomas in *United States ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 449 (2023). (Both are discussed below.)

[7] *Kelly* rejected several constitutional challenges to the FCA *qui tam* provisions. 9 F.3d at 750-60.

2

Article III of the Constitution, nor violate the principle of separation of powers, the Appointments Clause, or the Due Process Clause". 9 F.3d at 760. Other courts have reached the same conclusion that the FCA's *qui tam* provisions are consistent with constitutional structure. *See United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir. 1994). *See also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148 (2d Cir. 1993); *United States ex rel. K & R Ltd. Partnership v. Massachusetts Housing Finance Agency*, 154 F. Supp. 2d 19, 25-27 (D.D.C. 2001). This Court should hold likewise.

      The courts recognize that FCA's *qui tam* provisions are well-established from a historical perspective. Specifically, when Congress enacted the FCA in 1863, it included *qui tam* provisions based on a "long tradition of [such] actions in England and the American Colonies." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). These provisions allow private individuals, known as relators, to bring suit "for the person and for the United States Government" against "[a]ny person" who defrauds the government. *Id.* at 769 (quoting 31 U.S.C. §§ 3729(a), 3730(b)(1)). If the suit is successful, the relator is entitled to a share of the recovery. *Id.* at 769-70. The FCA has become "the government's 'primary litigative tool for combatting fraud,'" with the FCA's *qui tam* provisions serving "as a critical supplement to government enforcement." *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (quoting S. Rep. No. 99-345, at 2, 4 (1986)).

      The courts also recognize that the FCA's *qui tam* provisions do not offend the separation of powers doctrine. At its core, this doctrine focuses on "the allocation of official power among the three coequal branches of our Government." *See Clinton v. Jones*, 520 U.S. 681, 699 (1997). "[I]n determining whether [legislation] disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent

to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977). Courts repeatedly have held that *qui tam* actions do not upset such a balance.

*Qui tam* relators are private litigants. The Supreme Court has expressly declined to adopt a theory that they sue as "agent[s] of the United States." *Stevens*, 529 U.S. at 772. Their Article III standing exists due to a "concrete *private* interest in the outcome of the suit" that arises from Congress's "partial assignment of the Government's damages claim" to them. *Id.* at 772-73 (alteration accepted and emphasis added). While relators bring *qui tam* actions "in the name of the Government" (31 U.S.C. § 3730(b)(1)), this is a procedural practice that does not alter their status as private litigants with private interests. *See Stevens*, 529 U.S. at 780-81 n.9, 786 n.17 (actions pursued by relators are "private suit[s]" brought by "private parties."). Relators are not transformed into "official[s] of the United States" merely because, in pursuit of their own interests, they further a federal interest in remedying and deterring fraud on the United States. *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 252, 272 (2019) ("§ 3731(b)(2)'s use of the definite article 'the' suggests that Congress did not intend for any and all private relators to be considered 'the official of the United States.'").

The deep historical roots of *qui tam* provisions confirm that the FCA does not violate the separation of powers. "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943). In *Stevens*, the Supreme Court reviewed this "long tradition of *qui tam* actions in England and the American Colonies," as well as the "considerable number" of statutes with *qui tam* provisions passed by the First Congress. *See Stevens*, 529 U.S. at 774-77. The Court found this evidence "well nigh conclusive" in establishing that *qui tam* relators have Article III standing. *Id.* at 777.

The historical evidence is also highly relevant to the constitutional question presented here. *See Riley*, 252 F.3d at 752 (finding it "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* with respect to *qui tam* lawsuits initiated under the FCA is similarly conclusive with respect to the Article II question concerning this statute"). The First Congress enacted numerous *qui tam* provisions, thus making clear that the Framers did not believe relators were performing functions that only federal officers could properly perform. *See Bowsher v. Synar*, 478 U.S. 714, 723-24 (1986) (acts of the First Congress "provide[] contemporaneous and weighty evidence of the Constitution's meaning since many of the Members of the First Congress had taken part in framing that instrument") (quotation marks omitted). And the long tradition of *qui tam* actions in the United States after the Framing provides "additional evidence that the doctrine of separated powers does not prohibit" this unique practice, given that "'traditional ways of conducting government . . . give meaning' to the Constitution." *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952) (Frankfurter, J., concurring)); *see also NLRB v. Noel Canning*, 573 U.S. 513, 524-25 (2014) ("longstanding practice of the government can inform our determination of what the law is")(cleaned up).

    Courts rejecting constitutional challenges to the FCA have also observed that the United States retains significant control over *qui tam* suits. *See Riley*, 252 F.3d at 753-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 753-55; *Kreindler & Kreindler*, 985 F.2d at 1155. The Supreme Court also recently underscored this point in *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023), noting that if the government intervenes in a *qui tam* suit, "the relator loses control" and the action is "conducted by the Government." *Id.* at 425 (quoting 31 U.S.C. § 3730(b)(4)(A)). And even where the government initially declines to intervene, the Supreme Court confirmed in *Polansky* that it may intervene at a later time and move to

5

dismiss the relator's claims. *Id.* at 432-33, 437-38. Such motions are subject to highly deferential review under Rule 41(a) of the Federal Rules of Civil Procedure; indeed, the Court emphasized that "in all but the most exceptional cases" district courts must grant dismissal "even if the relator presents a credible assessment to the contrary." *Id.* at 437-38.

Beyond the government's broad dismissal authority, the FCA also provides the Executive with an array of tools for protecting the government's interests in cases where it does not intervene. The government can "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5). It can settle a *qui tam* action over the relator's objection. *See id.* § 3730(c)(2)(B). If it instead permits the *qui tam* action to proceed, the government is entitled to, among other things: (1) receive copies of all pleadings and deposition transcripts; (2) move to stay any discovery by the relator that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts"; and (3) prevent the relator from dismissing or settling a case without the government's approval. *Id.* § 3730(b)(1), (c)(3), (4). And because the first-to-file bar and the public disclosure bar do not apply to the government, the government can bring its own action even after a relator's suit is dismissed, subject to principles of claim preclusion. *See* 31 U.S.C. § 3730(b)(5), (e)(4). Courts rejecting separation-of-powers concerns regarding the *qui tam* provisions have noted all these mechanisms of "executive control." *Kelly*, 9 F.3d at 750-55; *accord, e.g., Riley*, 252 F.3d at 753; *Taxpayers Against Fraud*, 41 F.3d at 1041.

Envision's motion to dismiss does not address the authorities cited above and instead (as mentioned above) cites (A) a district court decision (*United States ex rel. Zafirov v. Florida Medical Associates, LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024)), and (B) the dissenting opinion of Justice Thomas in *Polansky*, 599 U.S. at 442. ECF 140 at p. 17 n.1. But neither of the cases that

Envision cites provide a basis to depart from the longstanding consensus among the courts of appeals that—as discussed above--uphold the constitutionality of the FCA's *qui tam* provisions.  Specifically, the district court in *Zafirov* based its analysis on the premise that, when relators bring FCA suits, they are suing on behalf of the United States in the exercise of "core executive power." *Id.* at *8.  But as described above, *qui tam* suits are private claims, pursuing the relator's interest in a share of the recovery as partially assigned by the government.  *Stevens*, 529 U.S. at 765-66.  The *Zafirov* court further erred in concluding that relators occupy an "office" akin to that of the Attorney General, which may vary from occupant to occupant.  2024 WL 4349242 at *11.  But while only one person holds the office of Attorney General at any given time, there are many relators, and a statute empowering an indeterminate number of private citizens to exercise certain powers does not create an "office."  This error of the district court is further underscored by the fact that when a relator dies, his estate may be substituted in his place (*id.* at *14), which is obviously not true for an "office" in the United States government.  Finally, even while acknowledging that "early Congresses enacted at least some statutes containing an enforcement mechanism roughly analogous to the FCA" (*id.* at *17), *Zafirov* improperly discounted the weight of this Founding-era evidence and also failed to square it with the Supreme Court's reliance on those early statutes in *Stevens*.

    *Zafirov* was found to be "unpersuasive" in *United States ex rel. Adams v. Chattanooga Hamilton County Hospital Authority*, Case No. 21cv84 (TRM/SKL), 2024 WL 4784372 at *3 (E.D. Tenn. November 7, 2024).  Specifically, the *Adams* court noted that *Zafirov* "relies chiefly on selections of dissents, concurrences, and law review articles," and concluded that "[a] single, outlier trial-court decision that whistles past precedent binding upon this Court provides no basis to ignore that precedent here."  2024 WL 4784372 at *3.[8]

---

[8] The *Adams* court was also unpersuaded by *Zafirov*'s suggestion that a concurring opinion in *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d
*(footnote cont'd on next page)*

Envision's invocation of the dissenting opinion of Justice Thomas in *Polansky* is similarly unavailing. A dissenting opinion "carr[ies] no legal force." *Georgia v. Pub.Resource.Org., Inc.*, 590 U.S. 255, 273 (2020); *accord Adams*, 2024 WL 4784372 at *2. This Court should instead adhere to the reasoning set forth in the controlling authority discussed above, such as *Stevens* and *Cochise Consultancy*.[9]

## IV. CONCLUSION

For the reasons set forth above, the FCA's *qui tam* provisions are consistent with the Constitution's separation of powers. Accordingly, if the Court reaches the

---

1032, 1050 (6th Cir. 1994) supports the proposition that an FCA relator is an "officer of the United States." *Adams*, 2024 WL 4784372 at *3 ("contrary to *Zafirov*'s suggestion, nothing in [the *Taxpayers Against Fraud*] concurrence suggested that an FCA relator is an 'officer' of the United States.'").

[9] For similar reasons, the court in *United States ex rel. Bolinger v. 24th St., Inc.*, Civil Action No. 18-15446 (RK)(JTQ), 2024 WL 3272828 (D. N.J. June 30, 2024) characterized as "specious" a constitutional challenge that an FCA defendant based on the dissent of Justice Thomas in *Polansky*. *Id.* at *9 n.3.

8

Defendants' constitutional arguments, it should reject them, as every federal Circuit Court to decide the issue has done.

Dated:  December 16, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
ROSS CUFF
Assistant United States Attorney
Chief, Civil Fraud Section
JAMIE ANN YAVELBERG
ANDY MAO
JOHN F. SCHIFALACUA

/s/ Frank D. Kortum
FRANK D. KORTUM
Assistant United States Attorney
Attorneys for the United States of America